UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TOAN HUYNH                                      CIVIL ACTION

VERSUS                                          NO. 26-00190

LKM CONVENIENCE, LLC and
LENNY MOTWANI                                   SECTION "N"

ORDER AND REASONS

Before the Court is Plaintiff Toan Huynh's Motion to Sever Claims Against Non-Debtor Surety and to Abstain and Remand.[1] Defendant LKM Convenience, LLC ("LKM") responded in opposition,[2] and Huynh replied in further support of his motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order and Reasons granting the motion.

I.      Factual Background

Huynh is the owner and lessor of commercial property in Bridge City, Louisiana. In August 2015, Huynh entered into a commercial lease with LKM as lessee. Co-defendant Lenny Motwani executed the lease as surety, thus becoming a party to the lease and bound with LKM *in solido*, "waiv[ing] all rights to release from this obligation … due to the filing of bankruptcy of Lessee, or upon Lessee's suspension, failure of insolvency, or to the appointment of a receiver for Lessee by

---

[1] Rec. Doc. 4.
[2] Rec. Doc. 9.
[3] Rec. Doc. 10.

any competent court."[4] LKM subsequently subleased the property to R&E Petroleum, LLC.[5]

On May 19, 2022, Huynh filed a Petition for Breach of Lease against LKM and Motwani in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, Louisiana.[6] Huynh alleges that LKM breached the lease by failing to maintain required insurance coverage and, following damage to the property by Hurricane Ida in August 2021, failing to make necessary repairs and to pay rent, among other violations.[7] In particular, Huynh alleges that LKM did not have the minimum general liability insurance coverage required by the lease. As a result of this breach, the building was not repaired, and the convenience store remained closed. During this time, R&E Petroleum and its guarantors filed for Chapter 11 bankruptcy, which stayed certain claims that these parties had been litigating separately. Ultimately, the parties reached a global settlement of the claims involving R&E Petroleum and its guarantors as well as the claims brought by Huynh against LKM and Motwani. Under the consent judgment entered by the state court on November 14, 2023, LKM and Motwani agreed to joint payment obligations in favor of Huynh and to enter into a new five-year commercial lease that included repairs to the building.[8] The new lease agreement contained a "Guaranty Addendum" in which Motwani, as guarantor, "solidarily, personally and unconditionally guarantee[d]" to Huynh the full payment

---

[4] Rec. Doc. 4-2 ¶ 36.
[5] Rec. Doc. 1-4 at 9.
[6] Rec. Doc. 1-2.
[7] Rec. Doc. 4 at 2.
[8] Rec. Doc. 4-4 ¶¶ 5, 7.B.

of rent and other amounts and full performance and observation of all obligations of LKM under the lease.[9] The addendum provided that such obligations continue in full force and effect notwithstanding the insolvency or bankruptcy of LKM.[10]

The resolution did not last. About two years later, on October 29, 2025, Huynh filed a petition to partially annul the consent judgment and reinstate his claims. Huynh alleges that LKM and Motwani are in default under the consent judgment for failing to obtain financing, make repairs to the premises, or make required payments.

Before the hearing date on Huynh's petition, LKM filed a petition seeking relief pursuant to Chapter 11 of the Bankruptcy Code on January 14, 2026.[11] The filing of the bankruptcy petition triggered an automatic stay under 11 U.S.C. § 362. About two weeks later, on January 27, 2026, LKM filed a notice of removal with this Court pursuant to 28 U.S.C. § 1452 on the grounds that the state court matter relates to and could have an effect upon property belonging to the bankruptcy estate.[12] On February 11, 2026, Huynh moved to sever the claims asserted against Motwani from the claims asserted against LKM pursuant to Federal Rule of Civil Procedure 21 and to remand the severed claims pursuant to 28 U.S.C. § 1334(c) and/or 28 U.S.C. § 1452(b) to allow them to proceed in state court.[13]

---

[9] Rec. Doc. 4-5 at 12.
[10] *Id.*
[11] Rec. Doc. 1-1 at 1 ¶ 2.
[12] *Id.* at 2.
[13] Rec. Doc. 4.

## II.    Law & Analysis

LKM removed this case pursuant to 28 U.S.C. § 1452 "because it relates to and could have an effect upon property belonging to the bankruptcy estate" of LKM.[14] Removal is permitted under section 1452 if the district court has jurisdiction of such claim or cause of action under 28 U.S.C. § 1334. Section 1334 provides district courts of jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11."

Huynh moves to have his claims against LKM severed from his claims against Motwani. He argues the latter do not arise under and are not related to a bankruptcy case under title 11 and that Motwani is not a debtor subject to the automatic stay. He further argues that these claims arise from Motwani's independent obligations as surety/guarantor on the parties' lease and settlement obligations and are separate and distinct such that their adjudication does not require any assessment of bankruptcy-related issues or determination affecting the estate's assets or distribution to creditors.[15] He seeks to have such claims remanded to state court pursuant to 28 U.S.C. § 1334(c)(2).

Rule 21 of the Federal Rules of Civil Procedure allows the court to "sever any claim against a party." Once severed, the claims proceed as separate, discrete actions. "A district court has wide discretion to sever a claim against a party into separate cases, in vindication of public and private factors."[16] Relevant factors for determining

---

[14] Rec. Doc. 1 at 2 ¶ 3.
[15] Rec. Doc. 4 at 1-2.
[16] *In re Rolls Royce Corp.*, 775 F.3d 671, 680 (5th Cir. 2014).

severance are: (1) whether the claims arose out of the same transaction or occurrence, (2) whether the claims present common questions of law or fact, (3) whether settlement or judicial economy would be promoted, (4) whether prejudice would be averted by severance, and (5) whether different witnesses and documentary proof are required for separate claims.[17] Further, courts have discretion to "'sever a claim against a party and transfer it to a more convenient forum or sever an unrelated claim and give it separate treatment when doing so would be in the interest of some or all of the parties.'"[18] When the issue before the court involves severance and transfer, as essentially is the case here, judicial economy is a central consideration.[19]

The claims against Motwani arise from his written agreement to act as surety for LKM under the 2015 lease agreement with Huynh. Under Louisiana law, suretyship is "an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter to do so."[20] As such, a surety is liable "for the full performance of the obligation of the principal obligor, without benefit of division or discussion."[21] A surety may assert "any defense to the principal obligation that the principal obligor could assert *except* lack of capacity or *discharge in bankruptcy of the principal obligor.*"[22] The written agreements reflect these legal standards. Motwani signed the original 2015 lease between Huynh and LKM individually as surety, "waiv[ing] all rights to release from this obligation [to be

---

[17] *Id.* at 680 n.40.
[18] *Id.* (quoting Wright & Miller, Fed. Prac. & Proc. § 1689 (3d ed. 2004)).
[19] *Id.* at 681.
[20] La. Civ. Code art. 3035.
[21] La. Civ. Code art. 3045.
[22] La. Civ. Code art. 3036 (emphasis added).

bound with LKM *in solido*] … due to the filing of bankruptcy of [LKM] …."[23] The lease provided that Huynh could "proceed to enforce this lease against [LKM] or Surety [Motwani]."[24] Huynh's ability to proceed separately against Motwani is reinforced by the consent judgment and the guaranty addendum to the new lease in which Motwani unconditionally guaranteed payment regardless of any insolvency or bankruptcy by LKM.

State law, the underlying lease agreement, the subsequent consent judgment, and the new lease all treat Motwani's surety obligation as independent of LKM's ability to pay, whether due to bankruptcy or otherwise. Accordingly, LKM's bankruptcy does not impede Huynh's ability to enforce the terms of the lease and consent judgment as to Motwani.

LKM argues that the automatic stay prevents this Court from severing and remanding any of the claims in this case. However, the automatic stay applies only to LKM as debtor—not to an individual surety distinct from the debtor. Under the bankruptcy code, the filing of a petition in bankruptcy automatically stays "the commencement or continuation … of a judicial, administrative, or other proceeding *against the debtor*…."[25] The purposes of the automatic stay are to protect the debtor's assets, provide temporary relief from creditors, and promote equitable distribution among the creditors.[26] By its text, the automatic stay provision does not apply to non-debtors. Accordingly, this provision is "rarely … a valid basis on which to stay actions

---

[23] Doc. 4-2 ¶ 36.
[24] *Id.*
[25] 11 U.S.C. § 362(a)(1) (emphasis added).
[26] *See Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003).

against non-debtors."[27] One such rare instance is where "such identity between the debtor and the third-party defendant exists that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor."[28] There is no suggestion that such identity exists here. Nor are there other factors that might warrant a discretionary stay against the co-defendant.[29]

Instead, the approach that better promotes judicial economy and minimizes prejudice is for the Court to sever those claims that are not related to LKM's bankruptcy so that the claims may proceed. LKM acknowledges that the claims between Huynh and Motwani arise under state law and are "non-core."[30] LKM still insists that these claims are properly before the bankruptcy court if they could alter the debtor's estate, but fails to explain how the claims could in fact do so.

Once severed, the only potential basis for federal jurisdiction over Huynh's claims against Motwani is 28 U.S.C. § 1334(b).[31] It is undisputed that the claims arise solely under state law and constitute non-core proceedings. It is further undisputed that there is no diversity among the parties.[32] Section 1334(b) provides that a federal court has jurisdiction over proceedings "arising under," "arising in a case under," or "related to a case under" title 11. Section 1334(c) provides that a district court, in the

---

[27] *Arnold v. Garlock, Inc.*, 278 F.3d 426, 436 (5th Cir. 2001).

[28] *Id.* (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d at 994, 999 (4th Cir. 1986)); *see also Reliant Energy Servs.*, 349 F.3d at 825.

[29] Nor does this Court's ability to transfer the proceeding to bankruptcy court prevent it from ordering severance and remand in a case presently before the Court, as LKM suggests.

[30] Rec. Doc. 9 at 3.

[31] *See* Rec. Doc. 1.

[32] *See id.* at 1.

interest of justice or in the interest of respect for state law, may abstain from hearing a proceeding even if it is related to a bankruptcy case or, upon motion of a party, "shall abstain" from hearing state law claims related to a bankruptcy case if such action, like this one, "is commenced, and can be timely adjudicated," in state court.

While LKM argues that Huynh's claims against Motwani are "related to a case under" title 11, this characterization is unsupported by the law. The Fifth Circuit's test for this jurisdictional prong is whether the outcome of the proceeding "could conceivably have any effect on the estate being administered in bankruptcy."[33] Claims against a third party do not relate to a bankruptcy case even if liability turns on the creditor's behavior where the amount of any liability will be paid by the third party rather than the bankruptcy estate.[34] Here, the outcome of Huynh's claims against Motwani will not affect the bankruptcy estate, as he is a separate party with an independent surety obligation. In any event, the interests of justice, and the fact that the claims began in state court and can be timely adjudicated there, weigh strongly in favor of this Court abstaining from jurisdiction and remanding the state law claims to allow them to be adjudicated in due course by the state forum in which they were litigated for years before LKM filed its bankruptcy petition. The claims against Motwani are thus properly remanded pursuant to 28 U.S.C. § 1334(c) and 28 U.S.C. § 1452(b).

Meanwhile, Huynh's claims against LKM are properly transferred to the bankruptcy court. Local Rule 83.4.1 provides that "[a]ll cases under Title 11 and all

---

[33] *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987) (internal quotation marks omitted).
[34] *In re Zale Corp.*, 62 F.3d 746, 756 (5th Cir. 1995).

proceedings arising under Title 11 or arising in or related to a case under Title 11 are transferred by the district court to the bankruptcy judges of this district," with statutory exceptions not applicable here. This rule is consistent with 28 U.S.C. § 157(a), which provides that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or or related to a case under title 11 shall be referred to the bankruptcy judges for the district."

## III.    Conclusion

Accordingly,

**IT IS ORDERED** that the motion to sever claims and to abstain and remand[35] is **GRANTED**.

**IT IS FURTHER ORDERED** that the claims asserted by Huynh against Motwani are severed and remanded to the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana.

**IT IS FURTHER ORDERED** that the claims asserted by Huynh against LKM are hereby **REFERRED** to the U.S. Bankruptcy Court for the Eastern District of Louisiana in accordance with Local Rule 83.4.1.

New Orleans, Louisiana, this 24th day of June, 2026.

_____
ANNA ST. JOHN
UNITED STATES DISTRICT JUDGE

---

[35] Rec. Doc. 4.